Thank you, Your Honor. Kenneth Seidel of Gibson Hoffman & Pansion for the plaintiff appellant. I wanted to start by focusing at the portion of the court's order denying leave to amend, because I think it gets at the crux of what the court had in mind as to the concept of what was required for a case of controversy for declaratory relief. The court says, until its motion picture is produced, or at least reaches some level of tangibility, no real dispute could exist, because it could not yet be liable for copyright infringement. If plaintiff actually produces something to which liability might potentially attach, then the court may be able to consider declaratory relief. Until that time, however, any amendment would be futile. This is exactly wrong. Why? Because both Medum, the Supreme Court case, and Roach Studios, the Ninth Circuit case, say that you do not have to go so far as to expose yourself to an infringement claim in order to have a declaratory relief case. And indeed, But counsel, would you agree that an idea cannot be copyrighted? Of course. So what do we have here beyond an idea? You have here a script, a script that has been registered with the Copyright Office for the movie. That's way beyond an idea. But isn't that a working script that can be amended or changed as we go along? Well, it could, but anything could be changed. And if it's changed, then whatever declaratory relief judgment we have is no good. Well, but that kind of sets up advisory rulings. If we don't have anything that's sufficiently fixed that we can say that this is actually the work, then why wasn't the district court correct to say we should wait until there's something more finite? Well, but the point of declaratory relief action is where you're about to do something that could expose you to liability, and you've had an exchange of threats, letters that we have in this case that articulate every possible theory for why plaintiffs should not be able to go forward with the film. You have issues that are concrete. I would like to focus on the court. Before we leave that, counsel, what is your strongest case to support the proposition that a declaratory relief action lies when there is no finished product? When there's no finished product? In other words, in a scenario that's analogous to this, where there is a rough screenplay or a rough musical composition, and there's a declaratory judgment in that context. Do you have a case? I think that that follows both from Medhume and Roach, but I would like to focus in on- But neither of those involve a rough work. I understand that, but if I could, the case that the court relies on below, the court below does not say you have to finish the motion picture. It says you have to do something. And the court says case law requires that you've, quote, completed all preparatory work on the product. So in other words, something short of the complete motion picture, but you've completed all preparatory work. Or at least a substantial amount of preparatory work. Well, I think that if you dig into the case that the court cites and the case that that court relies on, you'll see what the court is talking about. The court, following its language where it says, completed all preparatory work, cites the Kelly case. This is discussed in our opening brief at page 26. This is where the wife of Gene Kelly, who claimed to own the copyright to some interviews that Gene Kelly had given, was approached by the defendant, who was a college professor and who was a fan of Gene Kelly. And he was going to publish a book, and he wanted a license to include those interviews in his work. The plaintiff declined and decided she would file a copyright infringement action. It was not a declaratory relief action, but it was a copyright infringement action against the defendant for if he used those interviews. The court in Kelly, where the language that the district court picked up on, the court says, the court has little trouble concluding that no copyright infringement has yet occurred. And even more specifically, the court lacks sufficient facts to determine which interviews will be included in the work, because the defendant said, well, I haven't decided which works I'm going to include. And presumably, he was going to try to get a license from somebody else, because the interviews had been published by somebody else who had rights to them. And at that point, the Kelly court cites Schloss versus Sweeney, which contains the language the district court picked up on. It says, a plaintiff does not have to begin distribution of the potentially infringing product in order to have a controversy right for declaratory adjudication so long as the plaintiff has completed all preparatory work. Now, if you go to the Schloss versus Sweeney case, because that was the language that the court picked up on, in that case, the plaintiff had published a book about Lucia Joyce, who was the daughter of James Joyce. And he had gotten contacted by the estate of James Joyce. And the plaintiff was going to supplement her book with some material from James Joyce that the defendant and the estate objected to. And so the plaintiff brought a motion for declaratory relief. The defendant moved to dismiss on the grounds that there was not a case or controversy. And the court, in denying the motion, said the court can rule in this case without rendering an advisory opinion. A plaintiff does not have to begin distribution of the potentially infringing product in order to have a controversy right for declaratory judgment so long as the plaintiff has completed all preparatory work. And then the court says, in other words, the plaintiff must establish that the product presented to the court is the same product which will be produced if a declaration of infringement is obtained. Here, a plaintiff represented to the court under penalty of perjury that the contents of what they intended to publish will not change absent the court's explicit leave. Based on plaintiff's representation, the court finds that the copyright controversy between the parties is sufficiently definite to proceed. I submit to you that that's exactly the situation we have here, that we have a draft screenplay that's been submitted to the Copyright Office, and we're committing to stick to that script in producing the motion picture. So within the language that the court found determinative of all preparatory work, we've done sufficient preparatory work to have this be a case of controversy before the court. All right. Thank you, counsel. Did you want to save time for rebuttal? I do. Thank you. Thank you. Good morning, Your Honors. Ricardo Sestero on behalf of the defendants and respondents. I think Your Honors have it exactly right. They are asking for an advisory opinion. And frankly, Mr. Seidel's final argument really sets it out very clearly. He's talking about a script being turned into a movie. It might be the case, although I don't think it is, that the script itself is sufficiently final that it could set up a declaratory relief claim. But there's no dispute about the script. There's no dispute. We haven't alleged that there's any copyright infringement or any other infringements based on the script. This case is about a movie that might be made based on that script. So there's a second product coming down the line that hasn't even been started yet. So the district court got it exactly right, because- But Mr. Sestero, if the movie follows the script, isn't that sufficient? Judge, I can't possibly. Because a script is a written work that exists on the page. It's words. A movie is an audiovisual work. So the movie will, by definition, have images and sound and music and visual depictions, which will raise a whole host of additional copyright issues. If the music in the script is going to be not Marley's music, right? Actually, I'm sorry. Go ahead. And then his presence, his photograph, that's not a subject of copyright, is it? There are many Bob Marley photographs that we own the copyrights to, for sure. If they say they're going to use figures which are not copyrighted, and they're going to use music which is not copyrighted, and they're going to make a movie following the script, why isn't that sufficient preparatory work? Because this court can't possibly determine what it is it's comparing to decide whether there's been an infringement. As a practical matter, they're not going to be able to finance the movie unless they can get the script approved by the people who put up the money. And what you're saying is you've got to make the movie first before you can ask for declaratory relief. What I'm saying is the declaratory relief that they have asked for, which is about the movie, can't happen until there is a movie that we can look at and determine whether it actually infringes any of our rights. Regardless of the commitment of the plaintiffs to make a movie, not a jot or tittle different from the script. Well, again, by definition, it's a derivative work. So it will be different. Well, I mean, suppose the script says we're only going to use one photograph of Marley, which came out in public realm. And we're going to use no music of Marley. We're going to use all music of Beethoven. Why wouldn't that be sufficiently concrete to allow them to get a declaratory relief? Judge Beyer, you could come up with a hypothetical scenario like that, absolutely, where you could have a hypothetical set of facts where they have a screenplay and they want a very specific declaration that if we do x, y, or z with the screenplay, it does not infringe the copyrights owned by the defendants. But that's not what we have here. That's not what they've alleged here. They have not alleged. Indeed, they don't attach their screenplay to their complaint. They don't include any allegations regarding the contents of their screenplay in their complaint. Well, why shouldn't that be the basis for a leave to amend? Because there is no dispute currently about the screenplay. We have not alleged that the screenplay itself infringes any rights of the Marleys. So if they amend the complaint to say, this is the screenplay we're going to use, it's going to use things totally different from anything that's copyrighted, and we, under penalty of perjury, claim that we're going to do nothing but exactly what's in the screenplay, then you'd be satisfied. Then there would be no dispute. Then there would be no controversy, Your Honor, because if those were the facts, if those were the facts, and they had a screenplay that they were to say, this is it, we're not going to use any Marley music, which, by the way, they haven't said, because the screenplay does, in fact, reference Bob Marley songs. But taking your hypothetical, if they were to say, here's our screenplay, and it's not going to use any Bob Marley music, it's not going to use any Bob Marley photos, it's not going to use any Bob Marley imagery, it's not going to tell any stories about the members of Bob Marley's family that could be defamatory, we would then not have a controversy, because we would not be objecting. But you wouldn't object if it went back to the district court and allowed them to amend to make those allegations. I would, because there's no controversy. Because there has to be, in other words, there has to be a dispute about whether there is some sort of a copyright infringement, okay? Their basis for federal court jurisdiction here is copyright. It's a declaratory relief regarding copyright infringement. So unless there is an actual controversy where they believe that their use of a particular copyrighted work is okay, and we believe that it's a violation of our copyrights, there's no basis for this court's jurisdiction. So if they went back and did the sort of a cleanup that we've been discussing here, then you would say, go ahead and make a movie. Well, they can't go to the district court and clean it up because they've already admitted that we have not contended that the screenplay infringes any of our copyrights. So they already have judicial admissions in their reply brief, page two of their opening brief here, page five of their reply brief here, and in their complaint itself, they admit that we have never contended that their screenplay, their script, infringes our copyrights. So what you're saying is so long as they stick to the script, you've got no beef. As long as they don't use our copyrighted works, we have, as long as they don't infringe our rights, whether it's our copyrighted works or our trademarks, we can't complain. We have no basis to complain. So there is no controversy currently regarding the screenplay. The issue that we're dealing with here is a future hypothetical motion picture, which hasn't been made yet, which we don't know what the contours of it are. Why can't you ascertain the contours of the upcoming film from the parameters of the screenplay? Because we don't know exactly how the music, what music will be used, for example, how that music will be used. There will undoubtedly be, if the film is actually made and they use music and they don't get a license, I imagine they would make a fair use argument and we would have to determine under the fair use factors, whether in fact it is a fair use. We'd have to look at the quantity of the music used, what was used, whether the lyrics and the sound recordings were used, whether it was new performances based on the compositions or whether it was the master recordings. We can't possibly make that evaluation until we see in the film how that is used. The same is true of the use of trademarks, the use of the Marley name and the use of the Marley trademarks. We don't know whether they are going to use the Marley name prominently in a way that appears to indicate that the family in 56 Hope Road has endorsed the film. If they were to do that, that might create a claim for false designation of origin under the Lanham Act, but we don't know that yet. It's totally hypothetical because we haven't seen what they are doing yet with the film. So there is no dispute regarding the screenplay. Therefore, an amendment to allege something regarding the screenplay would be futile because there's no controversy. No, but there's an amendment to say that any movie we make will be not a jot or tittle different from the screenplay. That wouldn't satisfy you. We, well, again, assuming, I don't think that even works, but assuming that they could make that representation, that they have a screenplay which sufficiently identifies every use of our intellectual property that we could evaluate it, we might be able to consider that. But the current version of the screenplay, there is no dispute because we have not asserted that that screenplay infringes any of our copyrights. So as to the current version of the screenplay, there's no dispute, Your Honor, and that's where we are. So an amendment on that line doesn't help them because they still can't allege a case or controversy. The other thing that I will point out is that, again, in their opening brief and in their reply brief, they concede that we have never once made an allegation of a copyright infringement. We have never once said your screenplay infringes our copyright, or something else you're doing infringes our copyright. Because of that, there is no basis for this court's jurisdiction because we don't have a federal question that underlies the request for declaratory relief. And with that, I thank you very much. Thank you, Counsel. Yes, I would point out in our complaint, paragraph 5E, we expressly say, plaintiff has no intention to use and did not use in Rebels or any other Royal Palm copyrights. That's the script and the life story agreement. Any sound recordings, musical compositions, or photographs not licensed to or committed to be licensed in writing to plaintiffs. So, in our complaint, we're committing to not using any of the materials that they have rights to. And as they admit, there's no violation of those rights in the script that exists. With that, I'm done. All right, thank you, Counsel. Thank you to both Counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bea, Rice